## Will Bartley v. The State.

### No. 2758. Decided June 24, 1904.

**1.—Indictment—Name of Accused.**

Where the name of the accused has been properly set out in the indictment, a subsequent reference to that name, using the word "said," although the name may be spelled differently in subsequent portions of the indictment, is sufficient.

**2.—Bill of Exceptions—Objection to Testimony.**

Where there were no bills of exception reserved to the introduction of testimony, the matters objected to can not be considered.

**3.—Evidence—Circumstantial Evidence.**

See opinion for facts held sufficient to support a conviction for burglary, and to exclude every reasonable hypothesis except the guilt of the defendant.

**4.—Same—Possession of Property Recently Stolen.**

Possession of property recently stolen unexplained, or explained by a statement either unreasonable or untrue, is sufficient to justify a conviction for the theft of that property, and if defendant committed the theft of the articles taken from the house, he must be guilty of the burglary charged against him.

Appeal from the District Court of Kimble. Tried below before Hon. Clarence Martin.

Appeal from a conviction of burglary of a private residence in the daytime; penalty, two years' imprisonment in the penitentiary.

The opinion states the case.

*W. C. Linden,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant insists the indictment is deficient, because it alleges the property taken from the alleged burglarized house was so taken with the intent to appropriate it to the use and benefit of him, the said Will Bartlett; the contention being that his name is not Bartlett but Bartley. The indictment charges that Will Bartley committed the burglary, and that the entry into the residence was with the intent of him, the said Will Bartley, fraudulently to take, steal and carry away property out of said house; the concluding sentence of the indictment being, "with intent to appropriate the same to the use and benefit of him, the said Will Bartlett." This criticism of the indictment is without merit. Where the name has been properly set out, a subsequent reference to that name using the word "said," although the name may be spelled differently in subsequent portions of the indictment, does not vitiate.

The first ground of the motion for new trial (there being no errors assigned) complains of the ruling of the court requiring the witness "J. W. Bartley to write, under the direction of the district attorney, a portion of the note introduced in evidence as having been written by

the said J. W. Bartley on the 26th day of June, 1903, to T. H. Curry," and over appellant's objection, for the purpose of comparison. The second ground of the motion urges error because the court required the same witness to write figures on a blank sheet of paper for the purpose of comparison. Bills of exception were not reserved to this testimony, and therefore these matters will not be discussed.

The third ground of the motion attacks the sufficiency of the evidence. It is a case of circumstantial evidence. On Saturday the alleged owner, with his wife, closed his house and went to a town a few miles away, passing a neighbor's en route. Appellant and another young man stopped at this neighbor's and requested the privilege of having a ball or dancing party at his residence. Before leaving he inquired in regard to the alleged owner of the house, and was informed that he had passed this neighbor going to town. Appellant then left, going the road in the direction of his home, which led within 300 yards of the alleged burglarized house. Before leaving, the owner closed the house and latched the doors, but did not lock them. Inside the house were two kinds of cartridges, which were taken, and a blank book in which the owner kept some accounts. He returned that night, and on the following or next succeeding day, discovered the loss of his cartridges and book. The house apparently had not been opened. However, it could have been opened and the things taken and closed again without leaving any evidence of the entry so far as any damage to the building was concerned. On the day of the burglary appellant was seen with cartridges of the same size, character and make of those missed from the burglarized house. He was handling and shooting them. Shortly afterwards he disposed of the blank book, which was recovered by the owner. In other words, he was found in possession of cartridges on the day of the burglary exactly like those taken from the house, and a day or two afterwards gave away or traded the blank book the owner had in the house. Possession of recently stolen property unexplained, or explained by a statement either unreasonable or untrue, has always been held sufficient to justify a conviction for the theft of that property. If appellant committed the theft, of course it could have been done in no other way than by means of the burglary. Usually we have some tangible evidence of entry in burglary cases. Here there was none so far as injury to the building is concerned; and we are relegated to the fact of appellant's possession of the property taken from the house to ascertain the entry. As before stated, this is a case of circumstantial evidence, and in such case it has always been held that the evidence is sufficient if it excludes every reasonable hypothesis except that of guilt. Tested by that rule we believe the evidence in this case is sufficient to justify the finding that appellant was guilty of burglary. We have him in the immediate vicinity alone, traveling the road passing within 300 yards of the residence; we find him the same day exhibiting and shooting cartridges of the precise make that were in the house and taken therefrom; we find him in possession of the blank book; and that he tore certain leaves

from the book on which certain accounts were entered, and we find him giving this book away. In fact the testimony is of sufficient cogency to justify the jury in arriving at the conclusion that appellant committed the burglary. The judgment is affirmed.

*Affirmed.*

ON REHEARING.

November 30, 1904.

DAVIDSON, PRESIDING JUDGE.—At the Austin term the judgment was affirmed; motion for rehearing was filed, and the case transferred here for disposition.

It is contended that the court erred in its statement of the facts in the original opinion, in this language: "We have him in the immediate vicinity alone, traveling the road passing within 300 yards of the residence." And further: "Appellant and another young man stopped at this neighbor's and requested the privilege of having a ball or dancing party at his residence. Before leaving he inquired in regard to the alleged owner of the house, and was informed that he had passed this neighbor going to town. Appellant then left, going the road in the direction of his home, which led within 300 yards of the alleged burglarized house." It is contended that the evidence of the witness Jennings does not warrant this statement in the opinion. The opinion is further criticised in regard to its statement of the testimony of the witness Herbert Barrett, appellant insisting in his motion, that we stated Barrett's testimony too strongly. It is stated in appellant's motion for rehearing that Herbert Barrett lived two and one-half miles above Fleming's residence, which would be five miles from the witness Jennings—Fleming being the owner of the alleged burglarized residence, and that appellant left Jennings' at 11 o'clock. If the opinion is not literally correct in stating the facts, it is correct in`substance. Jennings' testimony was that he lived two and one-half miles below Ed Fleming's; and between Ed Fleming's and Junction City. On the morning of the 27th of June, Fleming and his wife passed this witness' house, in company with Coleman. ·Jennings was in the field plowing, by the side of the Junction City and Rock Springs road. Shortly after Fleming passed, appellant and a young man named Pitts came to where Jennings was and Pitts asked for a dance. This was in the presence of defendant. Pitts also, in the presence of defendant asked Jennings who had passed that morning; and Jennings told him, Fleming and his wife. He says: "I agreed that they could have a dance the next week. They stayed there and talked to me until near 11 o'clock, when Pitts went down the road in the direction of Junction City, and Bartley went up the road that leads by Ed Fleming's house, and said he was going home. Bartley lives about twelve miles up the river from my place, in the direction of Rock Springs. Defendant went on up the road in the direction of Fleming's house just after I had stated in his presence that Fleming and his wife had passed going towards town." Herbert Barrett testified

that he knew defendant, and that he came to his house on the morning of the 27th of June and ate dinner at his house that day. After noon there was some target practice with winchesters and a 22-caliber target rifle. He says: "Defendant furnished the 22-caliber cartridges and some 38-caliber winchester metal patched cartridges.  *  *  *  We used Ancil Wallace's target gun, 22-caliber; we furnished some of the 38-caliber cartridges that we used and the gun. Ancil Wallace was working for my father at the time, and kept 22-caliber cartridges, but I don't think he had any at that time; I never saw any box for the 38 cartridges, nor any box for the 22 cartridges. I think Bartley took them out of his pocket loose. After dinner Bartley and Ancil Wallace went up on the hill to get Bartley's horse and took the target with them." It seems from this statement that there is a mistake as to the statement in appellant's motion for rehearing, that this witness lived two and one-half miles above the alleged burglarized house, making it five miles from Jennings' to where he ate dinner; nor is the dinner hour stated. The contention of appellant that the court's language is too strong, in saying, "We find him in the immediate vicinity alone, traveling the road passing within 300 yards of the residence," we do not think is justified. There seems to be no question in this record, as we understand the facts, that the road appellant traveled passed within 300 yards of the burglarized house. We find him leaving Jennings' at near 11 o'clock, and following the road passing within 300 yards of the burglarized house; and further, he ate dinner at Barrett's, beyond the burglarized house from where appellant left Jennings. Whether the language be too strong or not, as used in the original opinion, the facts are as here stated, if we understand this record. We do not see how the language is too strong, when we say that we have him in the immediate vicinity, for if he traveled the road passing the house within 300 yards of it, it would justify the statement that he was in the immediate vicinity of the burglarized house.

It is contended, however, that the evidence is not sufficient to show or conclude that the house was broken and entered, and we are cited to Strickland v. State, 9 Texas Ct. Rep., 368, as authority for this conclusion on the part of the motion for rehearing. We do not think that case in point. The facts in the cited case show that the wife of the alleged owner of the house had a watch, which she placed in a trunk. Appellant was in the house at the time and may have seen her place the watch in the trunk, or he was in such position that he might have seen it. She went about her duties, getting supper, and appellant went off. She did not discover the loss of the watch until the following Thursday evening, when she returned from a visit to a neighbor's. Appellant in that case was not shown to have been about her premises, except when the watch was put in this trunk, or to have been placed in such relation to it that he could have entered the house after the watch was placed in the trunk; but he was in such relation to it that he could have taken it on the day the owner of the watch placed it

in the trunk.  As we understand the law in reference to this phase of burglary, a breaking can be shown by circumstances as well as by positive evidence.  In the cited case there was nothing to show the watch was taken on the day the owner of it was away, and defendant was not in any way connected with the taking, unless perhaps his subsequent possession of it.  The only opportunity he is shown to have had to take the watch was while he was in the house and before leaving it on Sunday, prior to the discovery of its loss the following Thursday.  There was nothing showing an entry of the house on the day that the owner of it was away, to wit, Thursday.  The case at bar shows that the house was closed and certain cartridges, suiting the exact description of those defendant had at Barrett's house, about the noon hour, or just after, were taken from the burglarized house from a box containing cartridges.  Appellant had exactly the same kind of cartridges in his pocket, and was exhibiting and shooting them shortly after passing the residence of Fleming, the house burglarized.  There was a blank book also taken from the house, which appellant is shown to have traded off or given away a few days afterwards.  The house alleged to have been burglarized was closed, but the doors were not locked—simply fastened; and of course could have been opened and closed again without any further breaking.  If this had been done, there would have been no external evidence on the doors of a breaking.  In cases of circumstantial evidence, if the facts are of sufficient cogency to show that defendant did the act to a moral certainty, that is, if it excludes every reasonable hypothesis except that of guilt, the case is sufficiently made out.  If appellant entered the house and got the goods, and did it as indicated, by simply opening the door and shutting it again, it was burglary.  He knew when he left Jennings' that the owner and his wife were absent and had gone to Junction City, in the opposite direction from that he was traveling.  There was no way of getting the stolen goods out of that house except for some one to enter it—the goods did not carry themselves out of the house or place themselves in appellant's possession.  We are of opinion that the evidence here is sufficiently cogent and excludes any reasonable hypothesis except that of the guilt of appellant, and that he must have entered and did enter the house and take the goods of which he was subsequently found in possession.  We are still of the opinion that the evidence is sufficient to justify the jury in finding that appellant entered the house, took the goods, and that he was the one who had committed the burglary, as found by the jury.  The motion for rehearing is overruled.

*Motion for rehearing overruled.*